## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MARTIN STERN AND ABRAHAM STERN, IN THEIR CAPACITIES AS TRUSTEES OF TOV V'CHESED FOUNDATION** | : : : : : | **No. 3:20-cv-01919 (VLB)** |
| **Plaintiffs,** | : | |
| | : | **January 18, 2023** |
| **v.** | : : | |
| **ROBERT E. GHENT, Defendant/Third-Party Plaintiff; LAWLOR TITLE GROUP, LLC, Defendant/Third-Party Plaintiff; GHENT REALTY ADVISORS, LLC, Defendant/Third-Party Plaintiff; MOUSTAPHA DIAKHATE, Defendant; ANSONIA DEVELOPERS, LLC, Defendant; JOHN DEVINE, Defendant; JOHN DEVINE & ASSOCIATES, Defendant; AND JOHN DEVINE LAW FIRM, Defendant;** | : : : : : : : : : : : : : | |
| **v.** | : : | |
| **ZALMAN KOMAR; EVERGREEN FUNDING COMPANY OF NEW YORK; DAVID SPORN; FOUR STAR FUNDING, INCORPORATED,** | : : : : | |
| **Third-Party Defendants.** | : | |

## MEMORANDUM OF DECISION ON THIRD PARTY DEFENDANTS' MOTIONS TO DISMISS THIRD PARTY COMPLAINT [DKTS. 129, 148]

This case is about a "hard money" loan gone wrong.   Plaintiffs Martin and

Abraham Stern, trustees of a New York-based charitable trust, Tov V'Chesed

Foundation, loaned $2.5 million to Moustapha Diakhate and his company, Ansonia

Developers, LLC ("ADL"), in exchange for a mortgage against ADL's real property

in Ansonia, Connecticut.[1]  Plaintiffs allege that Diakhate and his real estate advisors, Robert Ghent and John Devine, made false representations on which they relied during the transaction.

Plaintiffs bring claims of Fraud, Misrepresentation, Breach of Contract, Breach of Guaranty, a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, *et seq.*, and Civil Conspiracy against Diakhate; ADL; Ghent; Lawlor Title Group, LLC and Ghent Realty Advisors, LLC (Ghent's companies); Devine, and John Devine & Associates and John Devine Law Firm LLP (Devine's companies).  In turn, Robert Ghent and his companies have filed a Third-Party Complaint against Zalman Komar, Evergreen Funding Company of New York, David Sporn, and Four Star Funding, Incorporated, alleging these four Third-Party Defendants—who served as mortgage brokers during the transaction—are liable for Indemnification and Apportionment.

The Third-Party Defendants now move to dismiss the Third-Party Complaint in its entirety.  The Ghent Defendants failed to respond.  For the below reasons, the Third-Party Complaint is DISMISSED.

## BACKGROUND

I.    <u>The Parties</u>

Plaintiffs Martin and Abraham Stern are trustees of Tov V'Chesed Foundation ("Tov Foundation"), a charitable trust registered in New York.  (Dkt. 68 (First Am. Compl.) ¶ 11.)

---

[1]  A "hard money" loan is one in which "an owner of mortgaged property borrows new money and secures this loan with a mortgage against the existing property."   2 L. Distressed Real Est. § 26:5 (Nov. 2022).

There are several groups of Defendants.[2]   First, the three "Ghent Defendants."  Defendant Robert Ghent is a Connecticut resident who is a licensed real estate broker.  (Dkt. 68 ¶¶ 12, 26.)  He is the sole member of two Connecticut companies: Defendant Lawlor Title Group, LLC ("Lawlor Group"), a provider of real estate title services; and Defendant Ghent Realty Advisors, LLC ("Ghent Realty"), a real estate brokerage and advisory firm.  (*Id.* ¶¶ 13−14, 27−29.)   Ghent holds himself out to be a real estate "expert."  (*Id.* ¶ 31.)  While he used to practice law, he was suspended from 2014 through 2019. (*Id.* ¶ 29.)

The second group of Defendants is the two "Diakhate Defendants." Defendant Moustapha Diakhate, a Connecticut resident, is the sole member of Defendant Ansonia Developers, LLC ("ADL"), which is incorporated in Delaware but located in Connecticut.  (*Id.* ¶¶ 15−16, 34.)

The third group is the three "Devine Defendants."  Defendant John Devine is an attorney licensed to practice law in Connecticut.  (*Id.* ¶ 17.)  He has experience in real estate law and practices with Defendant John Devine & Associates ("Devine & Associates") and Defendant John Devine Law Firm LLP ("Devine Firm"), two Connecticut law firms.  (*Id.* ¶¶ 18−19.)

The Ghent Defendants are also Third-Party Plaintiffs.  They have brought Indemnification and Apportionment claims against Zalman Komar, Evergreen Funding Company of New York ("Evergreen"), David Sporn, and Four Star Funding,

---

[2] Plaintiffs initially named Blue Ribbon, LLC; Charles A. Liberti; Raymond R. Miller, Sr. (collectively, "Blue Ribbon Defendants"); and Thomas W. Calkins as defendants.  Plaintiffs have since stipulated to their dismissal.  (*See* Dkts. 90, 146.)  These dismissed defendants are not included as Defendants in this decision.

Incorporated ("Four Star") (collectively, "Third-Party Defendants"). (Dkt. 119 (Third-Party Compl.).) Komar and Sporn are mortgage brokers licensed in New York. (*Id.* ¶¶ 13, 26−27.) Komar specializes in "hard money lending." (*Id.*) Their companies—Evergreen and Four Star, respectively—are New York mortgage companies that provides financial services. (*Id.* ¶¶ 2, 4 11−12, 28−30.)

## II.   Plaintiffs' Operative Complaint

The Diakhate Defendants sought a $2.5 million mortgage loan from the Tov Foundation concerning a set of contiguous real properties located at 1 West Main Street and 35 Main Street in Ansonia, Connecticut ("Ansonia Properties").[3] (Dkt. 68 ¶¶ 1, 36.) In January 2017, the property was appraised in "average condition" worth $4.9 million. (*Id.* ¶ 40.) Diakhate and Ghent represented that Attorneys Ghent and Devine were "acting as counsel" for the transaction. (*Id.* ¶¶ 38−39.)

Defendants represented that one of the tenants, WK Development, LLC ("Tenant"), held a triple net lease; paid a $55,000 monthly rent; and intended to purchase the Ansonia Properties for $4.5 million. (*Id.* ¶¶ 42−44.) Defendants stated that the Tenant had already put $500,000 in escrow with Devine ("Escrow"). (*Id.*)

On November 30, 2017, the Ghent Defendants provided a title search and public records search on the Ansonia Properties and the Diakhate Defendants. (*Id.* ¶ 46.) The search revealed two mortgages on the Ansonia Properties. The first was a secured blanket mortgage held by Harrison, Vickers & Waterman LLC, which was recorded in the Ansonia land records on March 7, 2017 ("HVM Mortgage"). (*Id.* ¶ 47.) The second was a mortgage to Yeladim, LLC; Trustee Cynthia Lois Selmon;

---

[3] This mortgage loan will hereinafter be referred to as the "Tov Mortgage Loan."

and West Main Ansonia, LLC (collectively, "Yeladim Lenders"), to secure a debt on the principal amount of $3 million. (*Id.* ¶ 48.)  This mortgage ("Yeladim Mortgage") was recorded in the Ansonia land records on June 14, 2016.  (*Id.* ¶ 49.)

On December 21, 2017, a release concerning the Yeladim Mortgage was recorded in the Ansonia land records ("Release").  (*Id.* ¶ 49.)  Ghent e-mailed the Tov Foundation's counsel the next day stating the Release had been fully executed. (*Id.* ¶ 51.)  Ghent also furnished a "Lien, Judgement, & Litigation Report" representing that "ADL was not subject to any state tax liens, federal tax liens, judgment liens, UCC, or litigation." (*Id.* ¶ 52.)

To induce the Tov Foundation to loan the $2.5 million, the Ghent, Diakhate and Devine Defendants supplied several documents.  (*Id.* ¶¶ 43−45.)  They are: (1) the Tenant's agreement to subordinate the rights to the Tov Mortgage Loan., (*id.*); (2) ADL's assignment to the Tov Foundation concerning its right to the Escrow, (*id.*); and (3) a letter from Ghent representing that he was familiar with ADL's and Diakhate's "affairs," had examined all the records and documents, and that the Tov Mortgage Loan documents were enforceable, (*id.* ¶¶ 53−54.).

On December 26, 2017, the Tov Mortgage Loan closed and the Tov Foundation loaned ADL $2.5 million.  (*Id.* ¶ 56.)  ADL executed a note for $2.5 million ("Tov Note") and an Open-End Mortgage Deed and Security Agreement  to secure the Tov Note with the Ansonia Properties.  (*Id.* ¶ 60.)  The Tov Mortgage Loan was recorded on the Ansonia land records.  (*Id.*)  As further security, ADL executed an Assignment of Leases and Rents to the Tov Foundation and Diakhate guaranteed payment—personally, unconditionally and absolutely—of the Tov Note.   (*Id.*)

Ghent Realty was paid $44,033.52, Lawlor Group was paid $1,200.00, Calkins was paid $6,650.00, and the remainder was delivered to an account controlled by Ghent for the benefit of ADL. (*Id.* ¶ 59.)  Eight months later, ADL defaulted on the Tov Mortgage Loan.  (*Id.* ¶ 62.)

Plaintiffs allege that the Tov Foundation loaned ADL $2.5 million in reliance on the following misrepresentations: (a) the Ansonia Properties were valuable and in average condition; (b) the Tenant occupied the Ansonia Properties, paid substantial annual rent under its lease, intended to purchase Ansonia Properties for $4.5 million, and Devine held $500,000 in escrow; (c) the Tov Mortgage Loan would be the first mortgage lien against Ansonia Properties after payment of the HVW Mortgage; (d) the Yeladim Mortgage was no longer an encumbrance; (e) ADL had good title to Ansonia Properties; and (f) there were no pending or threatened proceedings against ADL that might affect the Ansonia Properties.  (*Id.* ¶ 57.)

After the Tov Mortgage Loan deal closed, several issues concerning the Ansonia Properties surfaced. First, it turned out Diakhate owned a company, Washington Management, LLC ("Washington Management"), that filed for bankruptcy in March 2016—this company held a predecessor title to the Ansonia Properties and, in February 2018, it initiated an adversary proceeding to reverse the property transfer from Washington Management to ADL. (*Id.* ¶¶ 63−66.)  In sum, ADL's title to the Ansonia Properties was allegedly voidable.  (*Id.*)  Second, Yeladim claimed the Yeladim Mortgage release was forged and void.  (*Id.* ¶ 67.)  In early 2020, the Yeladim Lenders instituted a foreclosure action on the Yeladim Mortgage against ADL, the Tov Foundation, and Diakhate.  (*Id.* ¶ 68.)  Third, the Tov

Foundation discovered the Tenant never agreed to purchase Ansonia Properties for $4.5 million and ceased paying rent due to their dilapidated conditions.  (*Id.* ¶ 69.)

### III.    The Ghent Defendants' Third-Party Complaint

Komar acted as an agent and mortgage broker for the Diakhate Defendants in the Tov Mortgage Loan.  (Dkt. 119 ¶¶ 2−3.)  After being introduced by a mutual friend, Komar identified the Tov Foundation as a potential lender.  (*Id.* ¶¶ 31−37.) Komar negotiated the terms of the Tov Mortgage Loan and presented the terms to Diakhate, and Sporn assisted him in these efforts.  (*Id.*)

Komar instructed Diakhate to present a forged release of the Yeladim Mortgage so the Ansonia Properties could be used as a security for the Tov Mortgage Loan.  (*Id.* ¶¶ 38, 49.)  Komar orchestrated and then forged the release himself.  (*Id.* ¶¶ 39−40.)

Both Komar and Sporn failed to properly investigate ADL's and Diakhate's assets to determine if they could repay the Tov Mortgage Loan.  (*Id.* ¶¶ 41−46.) They also failed to properly investigate whether Diakhate could be a guarantor for the Tov Mortgage Loan.  (*Id.*)

In reliance on Komar's and Sporn's actions, the Tov Foundation entered into a loan transaction that is unsecured based on the forged release and includes an improper guarantor.  (*See id.* ¶¶ 6, 19.)  The Ghent Defendants assert the following claims: (1) Common Law Indemnification against each Third-Party Defendant (Counts One through Four) for (a) failure to take adequate steps to ensure the documents were not forged, (b) failure to adequately investigate the Diakhate

Defendants' assets, (c) failure to take adequate steps to ensure the Diakhate Defendants' statements and representations were true, (d) instruction to Diakhate to produce  forged documents concerning the Yeladim Mortgage Release, and (e) failure to exercise due care; and (2) Apportionment from all Third-Party Defendants (Counts Five through Eight) should the Ghent Defendants be held liable for the Tov Foundation's damages.  (*Id.* ¶¶ 47−105.)

## PROCEDURAL HISTORY

Plaintiffs commenced this action on December 23, 2020.  (*See* Dkt. 1 (Compl.).)  After summonses were fully executed, Defendants responded in March and April 2021.  (*See* Dkts. 36 (Calkins Mot. Dismiss Count Six), 40 (Ghent Defs.' Ans.), 42 (Blue Ribbon Def.'s Mot. Dismiss), 63 (Diakhate Def.'s Mot. Dismiss).)  On April 28, 2021, Plaintiffs filed the operative First Amended Complaint.  (*See* Dkt. 68.) Plaintiffs bring the following claims: (1) Fraud against all Defendants; (2) Misrepresentation against all Defendants; (3) Breach of Contract against ADL; (4) Breach of Guaranty against Diakhate; (5) a CUTPA violation against the Ghent and Diakhate Defendants; and (6) Civil Conspiracy against all Defendants.

On June 22, 2021, Plaintiffs moved for partial judgment on the pleadings against the Diakhate Defendants on Counts Three and Four.  (*See* Dkt. 82 (Mot. 12(c)).)  The Diakhate Defendants did not contest the motion, conceding ADL defaulted on the Tov Note payments and that, due to the default, Diakhate was in breach of his personal guaranty.  (*See* Dkt. 88 (Def.'s 12(c) Response).)  After reviewing the record, the Court granted partial judgment on Counts Three and

Four, in relevant part, in the amount of $4,169,103 with post-judgment interest to accrue pursuant to 28 U.S.C. § 1961.  (Dkt. 96 (Order re Partial J.).)

In October 2021, the Court stayed and administratively closed the case after being alerted by the parties of a pending criminal proceeding against Defendant Diakhate.  (Dkt. 109 (Order).)   The Court also permitted the Ghent Defendants to file a Third-Party Complaint.  (Dkt. 101 (Mot. Leave) & 105 (Order).)  The Court ordered the parties to notify it when the criminal matter resolves.  (Dkts. 142 & 152.) This case remains closed.

On January 19, 2022, the Ghent Defendants filed their Third-Party Complaint against Komar, Evergreen, Sporn, and Four Star seeking indemnification and apportionment for their role in the Tov Mortgage Loan transaction.  (Dkt. 119.)  Four Star moved to dismiss the counts lodged against it on February 28, 2022.  (Dkt. 129 (Four Star Mot. Dismiss).)  The other three Defendants moved to dismiss the counts against them on April 8, 2022.[4]  (Dkt. 148 (Komar, Evergreen, Sporn Mot. Dismiss).) The Ghent Defendants never responded.

## LEGAL STANDARD

Third-Party Defendants seek dismissal under Rule 12(b)(2) and 12(b)(6) of Federal Rules of Civil Procedure.  Rule 12(b)(2) allows a party to assert by motion a defense that the court lacks personal jurisdiction.  Rule 12(b)(6) allows a party to assert by motion a defense that the complaint fails to state a claim upon which relief can be granted.

---

[4] For these parties, the deadline to file the Motion to Dismiss was March 31, 2022.

To successfully defeat a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig*., 334 F.3d 204, 206 (2d Cir. 2003). The burden varies depending on the procedural posture of the case. S*ee Ball v. Metallurgie Hoboken-Overpelt, S.A*., 902 F.2d 194, 197 (2d Cir. 1990); *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Group, Inc*., 312 F. Supp. 2d 247, 251 (D. Conn. 2004).   A plaintiff facing a Rule 12(b)(2) motion to dismiss made before any discovery only needs to allege facts constituting a prima facie showing of personal jurisdiction. *Charles Schwab Corp. v. Bank of Am. Corp*., 883 F.3d 68, 81 (2d Cir. 2018); *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Not all allegations in a complaint are entitled to the presumption of truth. *Id*. "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Rivera v. Westchester Cty*., 488 F. Supp. 3d 70, 75–76 (S.D.N.Y. 2020) (citing to *Leonard F. v. Isr. Disc. Bank of N.Y*., 199 F.3d 99, 107 (2d Cir. 1999)).   The defendant bears the burden of proof on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014).

As the District of Connecticut's Local Rules provide, "Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."   D. Conn. L. Civ. R. 7(a)(2).   Accordingly, the district court must still "consider the pleadings and determine whether they contain sufficient grounds for denying a motion to dismiss."   *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010).   Otherwise, the "except clause" in the rule would have no meaning.  *See id.*

## ANALYSIS

The Third-Party Defendants move to dismiss the Third-Party Complaint in its entirety.[5]   First, they allege the Indemnification claims (Counts One through Four) should be dismissed under Rule 12(b)(6), because the Ghent Defendants have failed to plead three out of four elements of the underlying negligence claim.[6]  (Dkt. 148 at 1.)  Second, for the Apportionment claims (Counts Five through Eight), they allege two arguments: a) the Court lacks personal jurisdiction over them under Rule 12(b)(2), because the claims are untimely under Conn. Gen. Stat.  § 52-102b(a); and b) the Ghent Defendants fail to state a claim on which relief may be granted under Rule 12(b)(6), because they have not alleged a negligence claim under Conn. Gen. Stat. § 52-572h.  *Id.*

---

[5] Four Star filed a Motion to Dismiss independently from Komar, Sporn and Evergreen. Nonetheless, the substance of the two pending motions is word-for-word identical. Accordingly, the Court will refer to the motions as if they are a single filing.

[6] The Third-Party Defendants raise another argument: the Ghent Defendants have not alleged negligence against them (rather, they allege negligence against the Plaintiffs). Because the Court dismisses the Indemnification claims based on the above argument, it need not address this one.  The Court notes that the Third-Party Defendants' case law on this issue is inapplicable because it concerns situations in which negligence claims are brought, which is not the situation here.

I.      <u>Indemnification</u>

Common law indemnification is "an action that arises between two tortfeasors, 'one, whose passive negligence resulted in a monetary recovery by the plaintiff; and a second, whose active negligence renders him liable to the first by way of reimbursement." *ATC P'ship v. Coats N. Am. Consol., Inc.*, 284 Conn. 537, 551 (2007) (quoting *Smith v. New Haven*, 258 Conn. 56, 66 (2001)); *Endurance Am. Specialty Ins. Co. v. William Kramer & Assocs., LLC*, No. 18:cv-00192 (MPS), 2020 WL 5548855, at *4 (D. Conn. Sept. 16, 2020) ("Connecticut courts distinguish between 'active or primary negligence,' and 'passive or secondary negligence.'"). For liability between tortfeasors to shift, the defendant must allege:

> (1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident . . . ; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent.

*Smith*, 258 Conn at 66.

The Third-Party Defendants argue that the Ghent Defendants fail to allege facts establishing the second, third and fourth elements.  The Court has evaluated the Third-Party Complaint and agrees.  For example, the pleadings do not even suggest that any of the Third-Party Defendants were "in control of the situation to the exclusion" of the Ghent Defendants.  *See id.*  Rather, the pleadings establish the Third-Party Defendants were "agents of" the Diakhate Defendants, just as the Ghent Defendants served as counsel to the Diakhate Defendants.  (*See* Dkt. 119 ¶¶ 2−5, 21.)  Taking as true that Komar forged the Yeladim Mortgage Release and

instructed Diakhate to present the Release, (*see id.* ¶¶ 38−40), the only other alleged unlawful conduct was Komar's and Sporn's failure to properly investigate the Diakhate Defendants' assets.  (*See id.* ¶¶ 41−46.)  These allegations do not absolve the Ghent Defendants from Plaintiffs' allegations that they "procured a title report and allegedly acted as counsel," "produced a forged release," "fraudulently claimed that the Ansonia [P]roperties were free and clear of any encumbrances giving the Tov Mortgage Loan a position of first priority," and that other documents were forged and/or false.  (*Id.* ¶¶ 20−25.)  After assessing Plaintiffs' and Third-Party Plaintiffs' operative pleadings, the Court finds the allegations a) indicate both the Ghent Defendants and the Third-Party Defendants were active participants, b) fail to establish anyone was in control at the exclusion of another, and c) do not address the Ghent Defendants' knowledge with respect to the Third-Party Defendants' conduct.  Therefore, Counts One through Four of the Third-Party Complaint are DISMISSED.

II.    **Apportionment**

The Third-Party Defendants argue the Apportionment claims should be dismissed for two reasons.  First, they are untimely under § 52-102b of the Connecticut General Statutes.  Second, they fail to state a claim on which relief may be granted, because the doctrine of apportionment applies only to negligence, and the underlying complaint does not assert a negligence claim.

The first argument fails for the same reason that the second argument is successful.  As Third-Party Defendants point out, Plaintiffs have raised claims of Fraud, Misrepresentation, a CUTPA violation, and Civil Conspiracy against the

Ghent Defendants and the Ghent Defendants have raised Indemnification and Apportionment claims.  The apportionment statute, Conn. Gen. Stat. § 52-102b, only applies to <u>negligence</u> actions where multiple tortfeasors are liable.  *See* Conn. Gen. Stat. § 52-102b(a) (permitting a "defendant in any civil action to which section 52-572h applies" to file a complaint against a non-party who may be liable for a proportionate share of the damages).  To the extent that the Ghent Defendants have alleged the Third-Party Defendants' conduct is negligent, they cannot apportion their liability to the intentional torts and statutory violations of which they are accused.  *See* Conn. Gen. Stat. § 52-572h(o) ("[T]here shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute . . . .").  For these reasons, the Court finds the Ghent Defendants have failed to state viable Apportionment claims.  Because the apportionment statute does not apply, the Third-Party Defendants' timeliness argument is similarly inapplicable here.  Counts Five through Eight of the Third-Party Complaint are DISMISSED.

### III.   <u>Failure to Oppose</u>

In any event, the Ghent Defendants have failed to oppose the Motion to Dismiss.  As the Local Rules provides, "Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."  D. Conn. L.

Civ. R. P. 7(a)(2).  Because the pleadings do not provide grounds to deny the Motion to Dismiss, the motion is GRANTED.

### CONCLUSION

For the aforementioned reasons, the Court GRANTS Third-Party Defendants' Motions to Dismiss, (Dkts. 129& 148), and instructs the Clerk to terminate Zalman Komar, Evergreen Funding Company of New York, David Sporn, and Four Star Funding, Incorporated from this case.

**IT IS SO ORDERED**

Vanessa L. Bryant
Digitally signed by Vanessa L. Bryant
Date: 2023.01.18 15:09:12 -05'00'

**Hon. Vanessa L. Bryant**
**United States District Judge**

Dated at Hartford, Connecticut: January 18, 2023